**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                                             **Case No. 06-CR-69**

**ROBIN R. FERRON,**

      **Defendant.**

---

**RECOMMENDATION TO THE HONORABLE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS**

---

On March 28, 2006, the grand jury returned a single-count indictment against the defendant, Robin R. Ferron ("Ferron"), charging her with attempting to dispense and distribute oxycodone "by delivering to another person two prescriptions for Oxycontin, which prescriptions had been signed in blank by another physician and completed by Ferron," in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Ferron filed a motion seeking to suppress the statement that she made to Brookfield police on December 16, 2005, and any fruits derived therefrom. In her motion, Ferron requested an evidentiary hearing and argued that the statement should be suppressed because she had not been advised of her Miranda rights. The government agreed with Ferron's request for an evidentiary hearing but stated that it believes Ferron was not in custody at the time the statement was made and therefore the Miranda warnings were not required. On June 12, 2006, this court conducted an evidentiary hearing to address Ferron's motion. The government appeared at the evidentiary hearing by Assistant United States Attorney Matthew L. Jacobs. Ferron appeared in person and by her attorney, Brian P. Mullins of Federal Defender Services of Wisconsin. Appearing on behalf of the government was Brookfield Police Officer Jesse Morales. The defense presented no witnesses and the defendant chose not to testify. A summary

of the evidence adduced at the hearing is set forth below. Both parties provided oral argument at the close of the hearing and the court ordered that any memoranda referring to any particularly relevant case law be provided no later than June 16, 2006. The Government filed a letter with the court providing case law in support of its position that Ferron was not in custody at the time of the statement and that if Ferron was in custody, that custody was supported by probable cause. The pleadings are now closed and Ferron's motion is ready for resolution. A jury trial is scheduled to begin on July 17, 2006, before the Honorable Lynn Adelman with a final pre-trial to be held on July 7, 2006.

## EVIDENTIARY HEARING SUMMARY

On December 16, 2005, Brookfield Police Officers Morales and Wichalz were dispatched to Kohl's Department Store located at 124th Street and North Avenue in regards to an unrelated shoplifting complaint. While meeting with Kohl's loss prevention officers regarding the shoplifting incident, a loss prevention officer, who was monitoring live video surveillance of the store, alerted Officer Morales of what he suspected was a drug deal occurring in the store. Officer Morales joined the loss prevention officer in monitoring the live video surveillance and recognized the defendant, whom he knew from a previous incident that occurred December 7, 2006, interacting with a black male, later identified as Ellis Clayton ("Clayton"). A recording of this incident was played at the evidentiary hearing and received into evidence as Exhibit 2.

The video recording depicts Ferron placing what appears to be paper on a shelf in the store. Clayton, who is standing next to Ferron, then picks up these pieces of paper. The camera zooms in with sufficient closeness and clarity that a person would likely be able to read at least some of the text contained on the paper. At a minimum, it is possible to determine that the paper was of a size and contained text consistent with prescriptions. At this point, Clayton begins to withdraw cash from his pocket. He withdraws a number of bills from his billfold and hands them to Ferron who accepts them

and quickly places the money in her pocket. Ferron and Clayton then part ways. The behavior of both Ferron and Clayton throughout this entire incident can be best described as furtive.

Officer Morales testified that he asked the assistance of the loss prevention officer in directing him to where in the store this incident was occurring. Officer Morales and the loss prevention officer left the loss prevention office and found Ferron in the store in the company of a black female, later identified as Kimberly Williams ("Williams"). Officer Morales, who was dressed in full police uniform, asked Ferron what she was doing and Ferron replied, "Nothing." Officer Morales then asked Williams what she was doing and Williams responded that she was obtaining paperwork regarding a doctor referral. Williams would not identify who it was that told her to go to a Kohl's Department Store to obtain this referral. When Officer Morales asked Williams if she thought these were odd circumstances to receive a doctor's referral, Williams agreed that a department store was an odd location to receive a doctor's referral.

Officer Morales testified that after talking with Williams for about five minutes he asked both women to accompany him to the loss prevention office. Although Officer Morales could not recall the specific words he used, he stated he did recall that neither woman expressed an unwillingness to accompany him to the loss prevention office, located approximated fifty to seventy-five feet away. Officer Morales testified that he chose to go to the loss prevention office because it was a more private place to talk. At no time did Officer Morales tell either woman that she was under arrest, nor did he use any measure of force to encourage the women to accompany him. However, Officer Morales testified that it was his subjective belief at the time that if Ferron sought to leave the store, he would have arrested her.

The loss prevention office area was described as a "stock room" and off of that stock room was a smaller room, identified as the actual loss prevention office where the video surveillance equipment

was maintained. This smaller room was described as being approximately ten or fifteen feet squared. However, at all times Ferron was within the larger stock room area immediately outside of the loss prevention office. Officer Morales asked Ferron if her medical license was still suspended, at which point she advised that it was. When asked at the evidentiary hearing why he asked this question, Officer Morales stated that it was "to build a better case." Officer Morales then arrested Ferron, placed her in handcuffs, searched her, and advised her of her Miranda rights. In response, Ferron invoked her right to counsel. Recovered from her person were, among other things, two prescriptions signed by Dr. Yee and made out to Kimberly Williams, a blank prescription form signed by Dr. Yee, pepper spray, and approximately $350.00 in cash.

Officer Morales testified that Officer Wichalz had stopped Clayton and Clayton told Officer Wichalz that he had obtained two prescriptions for Oxycontin from Ferron for the price of $75.00 each. Officer Wichalz provided Officer Morales this information but Officer Morales could not recall if he was provided this information before or after Ferron was placed under arrest.

Relevant to this incident is an earlier incident occurring nine days earlier on December 7, 2005 at Ferron's home. On that date, the Brookfield Police received an anonymous tip alleging that Oxycontin was being sold at that location. Police officers, including Officer Morales, responded to that location and met with three to four people who were arriving at the home. These people said they were going to the residence to meet with a doctor. Ferron was initially not at home but with the assistance of a woman who answered the door, Officer Morales was able to make contact with Ferron, who returned home within ten minutes. The officers were invited inside where they observed eight to ten people. Some of these people did not want to talk to the police but those who did said they were in the home to see a doctor.

-4-
Case 2:06-cr-00069-LA    Filed 06/19/06    Page 4 of 11    Document 12

Ferron identified herself as a doctor and told a police sergeant that she was issuing prescriptions. The sergeant asked for her DEA license numbers, which Ferron provided, and then she indicated that her license was in some jeopardy. Ferron then stated that she received a blank prescription pad signed by Dr. Yee. The police requested and obtained the blank prescription pad, which was then taken as evidence. Ferron declined to write a statement but agreed to review and sign a statement prepared by Officer Morales. Ferron reviewed and signed the statement that Officer Morales wrote, which was received into evidence as Exhibit 1. In that statement, Ferron indicates that her license to practice medicine was suspended. Ferron was then arrested for allegedly practicing medicine without a license and a suspected violation of state drug laws.

## ANALYSIS

In its broadest form, it is the argument of the defense that Officer Morales placed Ferron in custody without probable cause. Probable cause for arrest did not exist until Ferron made the custodial statement that her license was suspended. Therefore, because probable cause emerged out of the custodial statement given without the benefit of the Miranda warnings, the fruits of the search incident to arrest must be suppressed. However, if probable cause to arrest existed prior to the custodial statement, the defense may still seek the suppression of Ferron's statement as excludable under Miranda as an un-warned custodial statement. Under this scenario, the evidence seized from Ferron's person, however, would not be excludable because a search incident to arrest was not a consequence of the un-warned statement. Rather, the statement alone would be suppressed. The government argues that Ferron was never in custody and therefore the Miranda warnings were unnecessary.

-5-
Case 2:06-cr-00069-LA   Filed 06/19/06   Page 5 of 11   Document 12

## A. Custody

Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation. United States v. Jones, 21 F.3d 165, 170 (7th Cir.1994) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). A suspect is "in custody" for Miranda purposes if he is formally arrested or is subject to a restraint on freedom of movement associated with a formal arrest. United States v. Lennick, 917 F.2d 974, 977 (7th Cir. 1990); United States v. Wyatt, 179 F.2d 532, 535 (7th Cir. 1999) (citing United States v. James, 113 F.3d 721 (7th Cir. 1997)). In evaluating the "in custody" requirement, courts employ an objective analysis and review the totality of the circumstances. United States v. Fazio, 914 F.2d 950, 954 (7th Cir.1990); United States v. Wyatt, 179 F.3d 532, 535 (7th Cir. 1999). Factors that may be significant in determining whether suspect is "in custody" include: whether and to what extent the suspect has been made aware that he is free to refrain from answering questions; whether there has been prolonged, coercive, and accusatory questioning; whether police have employed subterfuge to induce self-incrimination; the degree of police control over environment in which interrogation takes place; whether suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has right to interrupt prolonged questioning by leaving scene. Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996) (internal citations omitted). Ultimately, the court's focus in regards to custodial interrogation is coercion. United States v. Martin, 63 F.3d 1422, 1430 (7th Cir. 1995).

Applying these factors to the testimony adduced at the evidentiary hearing, the court concludes that Ferron was not in custody at the time she stated to Officer Morales that her medical license was suspended. Significant factors in determining whether or not a reasonable person would have felt as if they were in custody is the duration and manner of the questioning. The facts of this case are far-removed from prolonged, coercive, or accusatory questioning.

Ferron's freedom of movement was never physically restrained or otherwise significantly curtailed. Ferron was never placed in handcuffs, searched, or even patted down for weapons. Officer Morales' request that Ferron accompany him to a back office of the store would not cause a reasonable person to believe she was being arrested and therefore is insufficient to render Ferron in custody and subject to Miranda. First, Officer Morales spoke in the form of a request as opposed to a demand or order. Second, no measure of force was used to encourage Ferron to accompany Officer Morales. Third, a reasonable person in Ferron's place would recognize a reasonable explanation for why a police officer would request that she come to a back office of a department store short of his intent to arrest her. A reasonable person would recognize the need, or even appreciate the opportunity, to discuss a matter with the police in an environment somewhat more private than the public areas of a department store during the holiday shopping season, particularly when discussing matters of a private nature such as medical issues.

The Seventh Circuit Court of Appeals recently held that a police officer's request that a suspect accompany him to another location more appropriate for questioning, did not constitute a seizure under the Fourth Amendment. United States v. Wade, 400 F.3d 1019 (7th Cir. 2005). Similarly, the Supreme Court has held that no seizure occurred when federal agents approached a woman in an airport, asked her some questions that caused the agents to be suspicious, and then asked her to accompany them to their office, located about fifty feet away and up a flight of stairs. United States v. Mendenhall, 446 U.S. 544, 548, 558 (1980). The fact that such conduct does not constitute a seizure under the Fourth Amendment indicates that the analogous conduct presented in this case does not constitute custody for the purposes of Miranda.

There was also insufficient police control over the environment in which Ferron was questioned to cause a reasonable person in Ferron's position to believe she was in custody. Although the police

were provided some level of access to the space, a reasonable person would readily recognize that it was not the police but rather Kohl's that was in actual control of the environment. Additionally, even though Officer Morales and perhaps Officer Wichalz were present when Ferron was questioned, the environment was not dominated by police. Kohl's employees were present in addition to Williams. The conclusion that the environment in which Ferron was questioned was insufficient to cause a reasonable person to believe she was in custody is supported by the fact that the Supreme Court has held that questioning in a substantially more police controlled environment, such as a police interrogation room, does not necessarily render a person in custody. California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam); Oregon v. Mathiason, 429 U.S. 492, 495 (1977).

Finally, a fact relevant to the conclusion that a reasonable person in Ferron's position would not feel as if she was being arrested when asked to accompany Officer Morales to the back office of the store, is that she had no reason to believe that Officer Morales had a basis to arrest her. There is no evidence to indicate that Officer Morales informed Ferron that he had observed Ferron's earlier interaction with Clayton. From Ferron's perspective, Officer Morales had merely greeted a person with whom he had earlier contact. However, Officer Morales became suspicious when Williams told him she was at a department store to receive a doctor's referral. A reasonable person would recognize that Williams' proffered explanation would cause a police officer to have additional questions. However, a reasonable person would also recognize that the statement does not indicate that a crime had been committed. Delivering a doctor's referral is quite different than delivering a prescription. Therefore, from the point of view of a reasonable person in Ferron's position, she was merely being asked to move to an environment more suitable for discussing the suspicious information Officer Morales learned as opposed to being arrested for a crime.

-8-
Case 2:06-cr-00069-LA   Filed 06/19/06   Page 8 of 11   Document 12

Because, under the totality of circumstances, a reasonable person in Ferron's position would not feel as if her freedom was significantly deprived in a manner consistent with a formal arrest, the Miranda warnings were not required prior to her being questioned by Officer Morales. Therefore, it is recommended that Ferron's motion to suppress her statement that her medical license was suspended, be **denied**.

### B. Probable Cause

Although the court cannot conclude that Ferron was in custody at the time she gave the statement that her medical license was still suspended, a finding of custody would necessarily suppress only her statement. The property recovered from her person as part of the search incident to arrest would still be admissible if there was probable cause to arrest before Ferron gave her statement.

"Probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." Pringle, 540 U.S. at 370-71 (quoting Gates, 462 U.S. at 232). "[T]he probable-cause standard is a "'practical, nontechnical conception'" that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 380 U.S. 160, 175-76 (1949)). A court decides whether a police officer had probable cause to arrest an individual by examining "the events leading up to the arrest and then decid[ing] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer amounted to' probable cause." Pringle, 540 U.S. at 371 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). The evidence collected "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 232 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Based upon the evidence produced at the evidentiary hearing, it is clear to the court that Officer Morales had sufficient probable cause to arrest Ferron at the time he initially confronted her in Kohl's Department Store. The surveillance video alone provided a substantial basis for a reasonable police officer to suspect that a crime had probably occurred. Officer Morales testified that the loss prevention officer alerted him of a suspected drug deal occurring in the store. There is no indication that the loss prevention officer had any prior dealings with Ferron but yet he was able to identify the conduct of Ferron and Clayton as indicative of a drug transaction.

Furthermore, unlike the loss prevention officer, Officer Morales was not merely relying upon the silent video surveillance. He was aided by his memory of his prior interaction with Ferron. Officer Morales testified that he recognized Ferron from having arrested her nine days earlier for allegedly distributing prescriptions while her medical license was suspended. The conduct that he observed on the video was consistent with his prior knowledge of her.

The defense appropriately points out that, although unorthodox, the criminality of Ferron's alleged conduct is dependent upon her license to prescribe medications being suspended and that absent Ferron's acknowledgment that her license was still suspended, Officer Morales had no knowledge of whether her license might have been reinstated in the nine days since Ferron's arrest. However, "[p]robable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983). It "does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). "Even if there is an innocent explanation, as long as there is a reasonable probability that there is criminal activity afoot, despite the presence of other possibilities, probable cause is present." United States v. Dorfman, 542 F. Supp. 345, 359 (N.D. Ill. 1982), aff'd sub nom., United States v. Williams, 737 F.2d 594 (7th Cir. 1984).

The short amount of time that had elapsed since Officer Morales had learned that Ferron's license was suspended and the strange circumstances of furtively delivering a prescription in a department store in exchange for cash, all support the reasonability of Officer Morales' conclusion that Ferron's license was still suspended and that she had probably committed a crime.

**IT IS THEREFORE RECOMMENDED** that Ferron's motion to suppress her statement be **denied.**

**IT IS FURTHER RECOMMENDED** that Ferron's motion to suppress the evidence seized from her person as a fruit of her statement be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin, this 19th day of June 2006.

                              BY THE COURT:

                              s/Aaron E. Goodstein

                              AARON E. GOODSTEIN
                              United States Magistrate Judge